UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GREGORY R. BLOCH and ANNE K.
BLOCH, also known as Anne Bloch,

    Plaintiffs,

v.                                    CASE NO. 3:12-cv-211-J-99TJC-JBT

REGIONS BANK as successor by
merger with Amsouth Bank, and
R.K. ARNOLD and/or his successor,
individually, and in his official capacity
as Pres/CEO of Mortgage Electronic
Registration Systems, Inc.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiffs' Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form) ("Application") (Doc. 2). On March 2, 2012, the Court entered an Order taking the Application under advisement and directing *pro se* Plaintiffs to file, by March 30, 2012, a proper complaint in accordance with the Order and one "Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)" for each Plaintiff. (Doc. 4.)

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

On March 30, 2012, Plaintiffs filed their First Amended Complaint to Recover [Real Property, Damages] ("First Amended Complaint") (Doc. 6), and their respective long form applications (Docs. 7 & 8). For the reasons stated herein, the Court will recommend that the Application (Doc. 2) be **DENIED** and that Plaintiffs be ordered to pay the filing fee within **sixty (60) days** of the Court's order on this Report and Recommendation, or else the case will be dismissed without prejudice.

The Court may, upon a finding of indigency, authorize the commencement of an action without requiring the prepayment of costs, fees, or security. 28 U.S.C. § 1915(a)(1). The Court's decision to grant *in forma pauperis* status is discretionary. *See Pace v. Evans*, 709 F.2d 1428, 1429 (11th Cir. 1983). While a litigant need not show he or she is "absolutely destitute" to qualify for *pauper* status under Section 1915, a litigant does need to show an inability "to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (per curiam). The Court's "consideration of a party's ability to pay . . . is not limited by the party's application for leave to proceed *in forma pauperis*" and the Court may look beyond the application. *Id.* at 1307 n.3.

The Court has "wide discretion" in ruling on a motion to proceed *in forma pauperis*, and should grant the privilege to proceed *in forma pauperis* "sparingly" in civil cases for damages. *Id.* at 1306. It is important to determine whether a litigant qualifies for *pauper* status because "a litigant whose filing fees and court costs are

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

The Court considers the information provided both in the original short form Application and the subsequently filed long form applications in determining whether Plaintiffs meet the financial criteria to proceed *in forma pauperis*. Plaintiffs list three dependents on their applications, one of whom is an eighteen-year-old college student. (Docs. 2 at 2; 7 at 3; 8 at 3.) In the short form Application, they list combined gross wages of $4,550.00 per month, and combined take-home pay of $4,300.00 per month. (Doc. 2 at 1.) Thus, their combined gross wages equal $54,600.00 per year.[2]

Both Mr. and Mrs. Bloch are employed. Mr. Bloch has been employed by his current employer since October 31, 2011, and Mrs. Bloch has been employed by her current employer since December 2008. (Docs. 7 at 2; 8 at 2.) Each Plaintiff has $810.00 in their joint personal checking account.[3] (*Id.*) They own two vehicles worth

---

[2] The long form applications provide that Plaintiffs' average monthly income for the past twelve months was $2,033.73 for Mr. Bloch and $1,530.00 for Mrs. Bloch, for a combined total of $3,563.73 per month and $42,764.76 per year. (*See* Docs. 7 at 2; 8 at 2.) Further, their expected monthly income next month is $4,602.00 for Mr. Bloch and $988.00 for Mrs. Bloch, for a combined total of $5,590.00 per month and a projected total of $67,080.00 per year. (*Id.*)

[3] The original Application reflects only $169.00 in cash or in a checking or savings account. (*See* Doc. 2 at 2.)

a total of $6,133.00.[4] (*Id.* at 3.) Plaintiffs' combined monthly living expenses include: $1,750.00 for rent; $657.00 for utilities[5]; $150.00 for home maintenance; $600.00 for credit card accounts[6]; $800.00 for food; $50.00 for clothing; $20.00 for laundry and dry-cleaning; $54.00 for medical and dental expenses; $27.00 for recreation and entertainment; $415.00 for transportation; $317.00 for insurance; and $125.00 for the college education of their eighteen-year-old daughter. (*Id.* at 4.)

Based on the information provided in Plaintiffs' applications, the Court finds that they can provide necessities for themselves and their dependents, and also pay the filing fees and costs associated with this action "without undue hardship." *Foster v. Cuyahoga Dep't of Health & Human Servs.*, 21 Fed. App'x 239, 240 (6th Cir. Aug. 6, 2001); *see also Schmitt v. U.S. Office of Personnel Management*, 2009 WL 3417866, *2 (M.D. Fla. Oct. 19, 2009). Plaintiffs' combined annual income of anywhere from $42,764.76 to $54,600.00 puts them well above the poverty level for a family of five, even assuming that they are responsible for the support of their eighteen-year-old daughter.[7]

---

[4] The original Application indicates that the same two vehicles are worth only $4,000.00. (*See* Doc. 2 at 2.)

[5] Plaintiffs' electric, water, phone, and Internet bills total $741.00. (Doc. 2 at 2.)

[6] Although the original Application indicates that Plaintiffs pay $100.00 a month to Leach-Owen Accounting, the long form applications show their monthly payment is $500.00. (*Compare* Doc. 2 at 2 *with* Docs. 7 and 8 at 4.)

[7] The 2012 poverty level for a family of five is $27,010.00. *See* http://aspe.hhs.gov/poverty/12poverty.shtml.

Moreover, although Plaintiffs have chosen to support their daughter by contributing $125.00 a month for her college education (*see* Docs. 7 at 5; 8 at 5), "it is not necessary that the [Plaintiffs'] daughter attend college at the [Plaintiffs'] expense." *Flowers v. Life Univ.*, 2006 WL 562192, *8 (N.D. Ga. Mar. 7, 2006); *see also Omegbu v. State of Wis. Elections Bd.*, 2005 WL 1876098, *2 (E.D. Wis. Aug. 5, 2005) ("While it is commendable that [plaintiff] supports his children's academic endeavors, the Court does not view such costs as a necessity of life like food, shelter or medical care.").

Further, Plaintiffs state that their combined monthly income in 2011 was less than $3,100.00,[8] which led them to borrow about $300-$400 a month from relatives to cover their monthly expenses. (Docs. 7 at 5; 8 at 5.) They also indicate that "repayment of $3338 credit card debt will begin accruing 23% interest in June 2012." (*Id.*) Nevertheless, they borrowed $3,500.00 from their son, who is employed full-time, to pay for paralegal services provided by BK Network, Inc. *in connection with this case*. (*Id.*)

Based on Plaintiffs' representations, it appears that "[t]he overall picture of [their] finances is consistent with many middle income Americans." *Olsen v. United States*, 2007 WL 1959205, *2 (D. Me. July 3, 2007). Although Plaintiffs' income puts them well above the poverty level, and they appear to have the ability to borrow from

---

[8] It appears Mr. Bloch was unemployed from March 2011 to October 2011. (Docs. 7 at 2; 8 at 2.) Nevertheless, this amount would still be well above the poverty level.

their family and elsewhere, they are asking the taxpayers to fund their lawsuit. However, if the Court allows that in this case, "practically every case will become eligible for *in forma pauperis* status depending upon [Plaintiffs'] current cash flow status." *Id.* Moreover, Plaintiffs' ability to borrow money and/or receive aid from family or friends, including $3,500.00 for paralegal services in connection with this case, further supports the conclusion that their Application should be denied. *See* In re *Takeshorse*, 177 B.R. 99, 100-01 (D. Mont. 1994) (finding that "the Debtor has not shown inability to pay the filing fee of $160 when the Debtor has the financial ability to pay an attorney fee which substantially exceeds the amount of the filing fee.").

Thus, Plaintiffs do not meet the financial criteria to proceed *in forma pauperis*, and the undersigned will recommend that they be required to pay the filing fee if they want to proceed with this action. In light of this conclusion, the Court need not decide whether this action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief," any one of which would require the Court to dismiss the action *sua sponte*. 28 U.S.C. § 1915(e)(2)(B).

However, the Court notes that Plaintiffs' First Amended Complaint requests, *inter alia*, that the Court stay a foreclosure action concerning Plaintiffs' real property until all filings with the Clay County Recorder's Office are corrected and the genuine original promissory note is returned to Plaintiffs. (Doc. 6 at 11-12.) Plaintiffs allege,

6

*inter alia*, that Defendants recently unlawfully confiscated their real property "through a fraudulent judicial foreclosure procedure that was based on the felonious acts of filing numerous false and/or forged documents in a Florida public office by Defendants." (*Id.* at 1.) In light of the state court foreclosure action, even assuming that the Court has jurisdiction over this action, it appears likely that this action would need to be stayed or dismissed based on abstention under *Younger v. Harris*, 401 U.S. 37 (1971), *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and/or the *Rooker-Feldman* doctrine.[9]

Moreover, despite being given an opportunity to re-file their Complaint (*see* Doc. 4), Plaintiffs have not sufficiently alleged federal jurisdiction. The First Amended Complaint alleges in relevant part:

> Under 28 U.S.C. § 1331, this complaint is being filed for in [sic] this jurisdiction, due to the diversity requirements which have been satisfied, as the dispute in this matter exceeds $75,000.00 and the parties reside in various states.
> . . .
> 1. Plaintiffs have filed this Complaint as an action to invoke Plaintiffs' Rights protected pursuant to Florida Law and Florida's Constitution, especially Plaintiffs' Due Process of Law and Property Rights.
> . . .
> 34. Gregory R. Bloch and Anne K Bloch are a married couple and a citizens [sic] and civilians of the State of Florida.
> 35. Regions Bank is a Corporation authorized to do and is doing business in the State of Florida.
> 36. Amsouth Bank is a Corporation authorized to do and is doing business in the State of Florida.

---

[9] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

> 37. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation is neither registered nor authorized to do business within the state of Florida as set forth in the records of the Florida Corporation Commission.
> 38. Defendant R.K. Arnold and or his successor or predecessor, by and through his Corporation, Mortgage Electronic Registration Systems, Inc. has caused events to occur within the jurisdiction of this Court from which Gregory R. Bloch and Anne K. Bloch's Complaint arises.
> 39. This Court has jurisdiction over this action pursuant to U.C.C. §§ 47-9207, 47-9210, 12-1251, 12-1252, and others.
> 40. Defendants have caused events to occur in the State of Florida, which events are the subject matter out of which the claims alleged in this Complaint arise.
> 41. That venue and jurisdiction is proper in this court for the Superior Court of the State of Florida.
> . . .
> 58. Plaintiffs [sic] claim this Complaint [sic] is well founded in law, equity, Florida *juris prudence*, and is in accordance with the Plaintiffs' Rights as protected by the Florida Constitution; and Florida law.

(Doc. 6 at 1-2, 7-8, 10.)

As shown by the above quoted paragraphs, none of Plaintiffs' claims[10] arises under the Constitution, laws, or treaties of the United States, and therefore, no federal question jurisdiction pursuant to 28 U.S.C. § 1331 has been alleged. In addition, the First Amended Complaint alleges that Plaintiffs are citizens of the State of Florida. (Doc. 6, ¶ 34.) However, it does not allege the citizenship of all Defendants. Therefore, it is questionable whether the Court has diversity jurisdiction under 28 U.S.C. § 1332.

---

[10] It is unclear exactly what claims Plaintiffs are alleging in their First Amended Complaint. (*See* Doc. 6.) It is also unclear exactly how each Defendant is responsible for any of these claims and how "Defendants and/or their successor" can be sued "individually in their official capacity." (*See, e.g., id.* at ¶¶ 30-32.)

Therefore, without making a determination regarding the grounds for dismissal listed in 28 U.S.C. § 1915(e)(2)(B), to the extent the Court has discretion to deny the Application, that discretion should be exercised to require Plaintiffs, rather than the taxpayers, to pay the costs of this lawsuit.[11]

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Application (**Doc. 2**) be **DENIED**.

2. Plaintiffs be ordered to pay the filing fee within **sixty (60) days** of the Court's order on this Report and Recommendation, and that Plaintiffs' failure to pay the filing fee in a timely manner result in the dismissal of this action without prejudice.

**DONE AND ENTERED** at Jacksonville, Florida, on April 23, 2012.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

*Pro Se* Plaintiffs

---

[11] If Plaintiffs do choose to pay the filing fee, the Court would need to further assess whether it has jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

9